UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELAWARE COALITION FOR
OPEN GOVERNMENT, INC.,

    *Plaintiff*,

    v.

THE HON. LEO E. STRINE, JR.,
THE HON. JOHN W. NOBLE,
THE HON. DONALD F. PARSONS, JR.,
THE HON. J. TRAVIS LASTER,
THE HON. SAM GLASSCOCK, III,
THE DELAWARE COURT OF CHANCERY,
AND THE STATE OF DELAWARE,

    *Defendants*.

No. 1:11-cv-01015-MAM

**BRIEF *AMICI CURIAE* OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND FIVE NEWS ORGANIZATIONS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**

William W. Erhart
William W. Erhart, P.A.
1011 Centre Road, Suite 117
Wilmington, DE 19805
Tel: (302) 651-0113
erhart@erhartlaw.com
*Counsel for* amici curiae *The Reporters Committee for Freedom of the Press, American Society of News Editors, The Associated Press, Maryland D.C. Delaware Broadcasters Association, The New York Times Company and The Washington Post*

Lucy A. Dalglish
Gregg P. Leslie
Kristen Rasmussen
The Reporters Committee for
  Freedom of the Press
1101 Wilson Blvd., Suite 1100
Arlington, VA 22209
Tel: (703) 807-2100
ldalglish@rcfp.org
*Of Counsel*

\* Additional counsel listed on following page

* Additional *amici* counsel:

Kevin M. Goldberg
Fletcher, Heald & Hildreth, PLC
1300 N. 17th St., 11th Floor
Arlington, VA 22209
*Counsel for American Society of
News Editors and Maryland D.C.
Delaware Broadcasters Association*

Karen Kaiser
Associate General Counsel
The Associated Press
450 W. 33rd Street
New York, NY 10001

George Freeman
David McCraw
V.P./Assistant General Counsels
The New York Times Company
620 Eighth Avenue
New York, NY 10018

Eric N. Lieberman
James A. McLaughlin
The Washington Post
1150 15th St., NW
Washington, DC 20071

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

STATEMENT OF INTEREST ............................................................................................... 1

ARGUMENT ............................................................................................................................ 1

    I.    Settlement agreements in the Chancery Court are judicial records subject to a right of public access that is balanced against the interests of the parties involved. ........................ 2

    II.   Courts must independently determine whether judicial records, including settlement agreements, should be sealed, notwithstanding the existence of court rules or private agreements requiring confidentiality. .................................................................................... 7

    III.  Private settlement agreements subject to confidentiality orders potentially pose significant risks to public health and safety. ....................................................................................... 9

CONCLUSION ....................................................................................................................... 14

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

**Cases**

*Baker v. Dolgencorp, Inc.*
  No. 2:10cv199, 2011 WL 166257 (E.D. Va. Jan. 19, 2011) ...................................................... 4

*Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*
  800 F.2d 339 (3d Cir. 1986) ............................................................................................. 4, 7–8

*Brown & Williamson Tobacco Corp. v. FTC*
  710 F.2d 1165 (6th Cir. 1983) ..................................................................................................... 8

*Brown v. Advantage Eng'g, Inc.*
  960 F.2d 1013 (11th Cir. 1992) ........................................................................................... 12–13

*Enprotech Corp. v. Renda*
  983 F.2d 17 (3d Cir. 1993) ......................................................................................................... 4

*Globe Newspaper Co. v. Superior Court*
  457 U.S. 596 (1982) ................................................................................................................. 13

*Hens v. Clientlogic Operating Corp.*, No. 05-CV-381S
  2010 WL 4340919 (W.D.N.Y. Nov. 2, 2010) ............................................................................ 4

*In re Sept. 11 Litig.*
  723 F. Supp. 2d 526 (S.D.N.Y. 2010) .................................................................................... 5–6

*Jessup v. Luther*
  277 F.3d 926 (7th Cir. 2002) ...................................................................................................... 8

*K.S. v. Ambassador Programs, Inc.*
  No. 1:10CV439, 2010 WL 3565481 (E.D. Va. Sept. 3, 2010) ................................................... 4

*LEAP Sys., Inc. v. MoneyTrax, Inc.*
  638 F.3d 216 (3d Cir. 2011) ................................................................................................... 3, 5

*Nixon v. Warner Commc'ns, Inc.*
  435 U.S. 589 (1978) ........................................................................................................ 2 & n.1

*Pansy v. Borough of Stroudsburg*
  23 F.3d 772 (3d Cir. 1994) ...................................................................................................... 3–4

*Platypus Wear, Inc. v. U.S. Fid. & Guar. Co.*
  No. 09CV2839 JLS (WVG), 2010 WL 4281805 (S.D. Cal. Oct. 25, 2010) .............................. 4

*Press-Enterprise Co. v. Superior Court*
  464 U.S. 501 (1984) ....................................................................................................... 2 n.1, 12

ii

*Richmond Newspapers, Inc. v. Virginia*
    448 U.S. 555 (1980) .................................................................................................. 11–12

*State Farm Fire & Cas. Co. v. Hood*
    No. 2:07-cv-188(DCB)(MTP), 2010 WL 3522445 (S.D. Miss. Sept. 2, 2010) ...................... 4–5

*Union Oil Co. v. Leavell*
    220 F.3d 562 (7th Cir. 2000) ............................................................................................ 12

*Wilson v. Am. Motors Corp.*
    759 F.2d 1568 (11th Cir. 1985) .......................................................................................... 8

*Zurich Am. Ins. Co. v. Rite Aid Corp.*
    345 F. Supp. 2d 497 (E.D. Pa. 2004) .................................................................................. 7

**Statute**

Del. Code Ann. tit. 10, § 349(c) (West 2011) ............................................................ 3 n.2

**Rule**

Del. Ct. Chancery R. 98(e) ................................................................................................ 1

**Other Authorities**

Keith Bradsher, *S.U.V. Tire Defects Were Known in '96 but Not Reported*
    N.Y. Times, June 24, 2001, at A11, *available at* 2001 WLNR 3356280 ................................ 10

Matt Carroll *et al.*, *Church Allowed Abuse by Priest for Years: Aware of*
    *Geoghan Record, Archdiocese Still Shuttled Him from Parish to Parish*
    Bos. Globe, Jan. 6, 2002, at A1, *available at* 2002 WLNR 2612594 ..................................... 10

Matt Carroll *et al.*, *Scores of Priests Involved in Sex Abuse Cases:*
    *Settlements Kept Scope of Issue out of Public Eye*, Bos. Globe
    Jan. 31, 2002, at A1, *available at* 2002 WLNR 2608621 ....................................................... 10

Barry Siegel, *Dilemmas of Settling in Secret*, L.A. Times
    Apr. 5, 1991, at A1, *available at* 1991 WLNR 3872929 ........................................................ 11

Matthew L. Wald & Keith Bradsher, *Judge Tells Firestone to Release Technical Data*
    *on Tires*, N.Y. Times, Sept. 28, 2000, at C2, *available at* 2000 WLNR 3207540 ............... 9–10

Elsa Walsh & Benjamin Weiser, *Court Secrecy Masks Safety Issues; Key GM Fuel*
    *Tank Memos Kept Hidden in Auto Crash Suits*, Wash. Post, Oct. 23, 1988, at A1 ............ 10–11

**STATEMENT OF INTEREST**

As set forth more fully in the accompanying motion for leave to file this brief, *amici* have a strong interest in upholding the public's right to access, monitor and report on the proceedings of this nation's court system. The Delaware Court of Chancery ("the Chancery Court") rules at issue in this case raise a significant concern about the proper application, or lack thereof, of the well-established procedure courts must undertake before sealing court proceedings and records to which the First Amendment or common law right of access attaches.

*Amici* appreciate the rationale underlying the policy of confidentiality in private arbitration proceedings and recognize that courts have found no right of access to arbitration proceedings. This jurisprudence, however, does not extend to the access right to arbitration records, namely settlement agreements filed with a court, which often reveal serious questions about public health and safety. Parties concerned about the confidentiality of information contained in documents related to private arbitration do not have to consent to the jurisdiction of the Chancery Court. But when they do invoke the authority of a publicly funded court, the rules governing confidentiality change, and a presumption in favor of openness attaches to the records at issue. As such, *amici* submit this brief in order to urge this Court to ensure that the Chancery Court properly protects the public's right of access to court-supervised settlement agreements.

**ARGUMENT**

Courts have held that settlement agreements that are submitted to a court for either approval or enforcement are court records subject to disclosure. Beyond requiring the Chancery Court to approve settlement agreements between private parties, its rules also authorize the court to assist in reaching them, Del. Ct. Chancery R. 98(e), and thus documents filed in connection therewith are judicial records. As such, parties attempting to block public access to these records

1

must justify the sealing. *See*, *e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (footnotes omitted); *id.* at 602 ("Also on respondents' side is the presumption — however gauged — in favor of public access to judicial records.").[1] Because the Chancery Court rules do not accommodate public access concerns or provide for the procedural steps necessary to close judicial records from the public, they violate the public's right of access. Moreover, the need for a party to make necessary showings is not obviated by the Chancery Court rules' requirement that arbitration proceedings be confidential or private agreements to that effect. In fact, the strong public interest in access to information about important disputes resolved in the Chancery Court often outweighs the parties' privacy and proprietary interests.

## I. Settlement agreements in the Chancery Court are judicial records subject to a right of public access that is balanced against the interests of the parties involved.

Defendants make much of the fact that the Chancery Court rules authorize unsealing of arbitration records if and when the proceedings are appealed to the state Supreme Court, claiming this procedure preserves the right of public access to the records. *See* D.I. 20 (Defs.' Opening Br.) 2–3, 6–7, 9, 29–33. However, the determination of whether a right of access to

---

[1] Where the records at issue are subject to the common law right of access, courts must balance the interests of the parties involved with those of the public and the press. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978). Parties seeking to restrict the First Amendment access right must meet a higher burden: establishing a compelling need for secrecy and demonstrating that alternatives to sealing the record are inadequate. *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984). *Amici* take no position on whether the right of access to private settlement agreements is anchored in the First Amendment or the common law, namely because the Chancery Court's rules allowing blanket sealing without any showing fail under either standard.

settlement agreements exists turns not on whether the parties involved seek review[2] but rather on whether the documents are judicial records. Because its rules not only require the Chancery Court to approve these agreements but also authorize it to assist the parties in reaching them, documents filed in connection therewith are undoubtedly judicial records subject to the right of public access. Yet, parties seeking to restrict disclosure may move to do so and are entitled to limited sealing if they can demonstrate a significant interest in secrecy that outweighs the strong presumption in favor of access to court documents.

One of the key factors in a determination of whether settlement agreements may be sealed is whether the documents are filed with the court or presented to it for enforcement or interpretative guidance, and thus are judicial records. The U.S. Court of Appeals for the Third Circuit has made clear that in such cases, the agreements are indeed court records subject to disclosure. Last year, the Third Circuit affirmed a trial court's holding that private parties' confidential settlement, the terms of which the judge read into the record at the parties' request, was a judicial record subject to the presumption of openness. *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220–21 (3d Cir. 2011). Not only was the transcript filed with the court clerk and listed on the court's docket, the parties specifically asked the court to retain jurisdiction over the dispute to interpret and enforce the terms of the settlement agreement. *Id.*; *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994) (holding that a settlement agreement that was never filed with, interpreted or enforced by the court, which also had not ordered

---

[2] Defendants' assertion is particularly nonsensical when applied to settlement agreements, which presumably may not be appealed to the Supreme Court and thus not publicly filed. *See* Del. Code Ann. tit. 10, § 349(c) (West 2011) (authorizing the filing with the Supreme Court of applications to vacate, stay, or enforce an arbitration award of the Chancery Court). Under this theory, all settlement agreements reached in the Chancery Court are shielded from public view, despite their approval by the judicial arbitrator.

3

compliance with any of the agreement's terms, was not a judicial record); *Enprotech Corp. v. Renda*, 983 F.2d 17, 20 (3d Cir. 1993) (same); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986) (holding that the common law presumption of access applied to a settlement agreement filed and submitted to the court for approval).

Lower courts likewise consider a court's role, if any, in private arbitration when evaluating whether a settlement agreement is a judicial record subject to disclosure. *See*, *e.g.*, *Baker v. Dolgencorp, Inc.*, No. 2:10cv199, 2011 WL 166257, at *2 (E.D. Va. Jan. 19, 2011) (holding that settlement agreements under the Fair Labor Standards Act trigger the common law right of public access because the courts are charged with the responsibility of scrutinizing them for fairness, an evaluation that clearly is a judicial act); *Hens v. Clientlogic Operating Corp.*, No. 05-CV-381S, 2010 WL 4340919, at *2 (W.D.N.Y. Nov. 2, 2010) (same); *Platypus Wear, Inc. v. U.S. Fid. & Guar. Co.*, No. 09CV2839 JLS (WVG), 2010 WL 4281805, at *1, *2 (S.D. Cal. Oct. 25, 2010) (holding that a court transcript containing the terms of a settlement was a court document to which a presumption of public access attached and noting that while settlement discussions are confidential for important reasons, settlement terms are not subject to the same public policy consideration); *K.S. v. Ambassador Programs, Inc.*, No. 1:10CV439, 2010 WL 3565481, at *2 n.6 (E.D. Va. Sept. 3, 2010) (holding that various filings reflecting the terms of the judicially approved settlement in a personal injury case involving a minor plaintiff were, without question, judicial records because they adjudicated substantive rights and served as a substitute for trial); *State Farm Fire & Cas. Co. v. Hood*, No. 2:07-cv-188(DCB)(MTP), 2010 WL 3522445, at *2 (S.D. Miss. Sept. 2, 2010) (holding that the common law presumption of

access applies to settlement agreements filed with the court, which become part of the judicial record).

Defendants and supporting *amici* assert that finding a right of public access to private arbitration proceedings in the Chancery Court would discourage use of the forum by companies that wish to resolve disputes with other business entities through confidential arbitration. D.I. 20 (Defs.' Opening Br.) 29; D.I. 21-1 (Br. of *Amicus Curiae* the Corporation Law Section of the Del. State Bar Association) 13–14; D.I. 27-1 (Br. of *Amici Curiae* NASDAQ OMX Group, Inc. *et al.*) 7–8. This claim, however, ignores the well-established rule that parties may move to keep material shielded from public view, and courts allow limited sealing where those parties can show a significant interest in secrecy sufficient to overcome the strong presumption in favor of access. In the 2011 Third Circuit case affirming the finding that an access right applied to a confidential settlement agreement filed with the court, the appellate court nonetheless ruled that the agreement need not be disclosed to the public. *LEAP*, 638 F.3d at 223. Specifically, the court held that a party's reliance on the court's assurance that the transcript memorializing the terms of the agreement would remain confidential was a significant privacy interest, while the public interest in disclosure was minimal. *Id.* at 222. Thus, according to the court, the party's privacy interest outweighed the access right, and the strong presumption in favor of public accessibility had been rebutted. *Id.* at 222–23.[3]

Moreover, a U.S. District Court ruled that portions of the settlement reached in several property damage cases related to the terrorist attacks of September 11, 2001, could remain

---

[3] As discussed further in Part II, courts should not, and do not, grant sealing requests merely because the records at issue are subject to a private confidentiality agreement or other assurance that they will not be disclosed. As such, *amici* do not cite this case for its holding but rather to point out that parties seeking to restrict public disclosure to records to which the access right applies have a mechanism whereby they may attempt to do so.

shielded from public view. *In re Sept. 11 Litig.*, 723 F. Supp. 2d 526, 533 (S.D.N.Y. 2010). The court considered four categories of information under seal: 1) the total settlement amount; 2) the amount to be paid by the various defendants' insurers; 3) the amount allocated to each plaintiff; and 4) the discovery materials exchanged during the settlement process. *Id.* at 531. Defendants argued that disclosure of information in the first two categories would have a chilling effect on the settlement prospects of other lawsuits pending against them and would cast defendants in a false light. *Id.* at 532. The court found these arguments insufficient to outweigh the presumption of public access to judicial documents and vacated the portion of its order that sealed the aggregate settlement amount and its allocation among insurers. *Id.* at 533. In contrast, the court held that the privacy interests of the plaintiffs overcame the right of public access to information about the allocation of settlement proceeds among them. *Id.* The confidential discovery documents, according to the court, did not need to be disclosed because they were neither relied on by the court in its approval of the settlement nor traditionally accessible to the public. *Id.*

Private settlement agreements must be approved by the Chancery Court, which also has the power to assist the parties in reaching them. As such, there is no question that documents filed in connection therewith are judicial records subject to a right of public access, regardless of whether the proceedings are appealed to the state Supreme Court. However, parties seeking to restrict public disclosure may move to do so, and courts will allow limited sealing where those parties can demonstrate a significant interest in secrecy sufficient to overcome the strong presumption in favor of public access to judicial records and documents.

## II. Courts must independently determine whether judicial records, including settlement agreements, should be sealed, notwithstanding the existence of court rules or private agreements requiring confidentiality.

Courts nationwide have rejected the premise that court rules or private agreements mandating confidentiality in arbitration proceedings somehow obviate the need for a party to make the necessary showings required to overcome the right of public access to judicial records and documents. While the protection of parties' sensitive information as a means to promote effective arbitration may indeed be a significant interest in secrecy, court rules and private agreements that require blanket confidentiality in an attempt to satisfy this interest do not automatically defeat the strong presumption in favor of public access to court records but instead are subject to a judicial balancing of the interests.

In a *sua sponte* challenge to parties' agreement that the entire court file and docket sheet relating to their private arbitration, including the settlement, a U.S. District Court rejected the very argument Defendants advance here: Neither the "confidentiality procedures of the American Arbitration Association [nor] the federal policy of encouraging arbitration trump the clear law and policy standards established by the United State [sic] Supreme Court and the Court of Appeals for the Third Circuit for maintaining open and accessible records of legal matters for public scrutiny." *Zurich Am. Ins. Co. v. Rite Aid Corp.*, 345 F. Supp. 2d 497, 499, 507 n.3 (E.D. Pa. 2004). A divided Third Circuit panel likewise held that a party's claim of a generalized interest in settling lawsuits on confidential terms was not sufficient to support the sealing of a settlement agreement submitted to the court for enforcement:

> Having undertaken to utilize the judicial process to interpret the settlement and to enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements. Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records.

*Rittenhouse*, 800 F.2d at 345.

*Amici curiae* NASDAQ OMX Group, Inc. *et al.* seemingly assume that parties' contractual agreement to maintain the confidentiality of their arbitration proceedings is dispositive on the issue of whether records filed in connection therewith may be sealed. *See* D.I. 27-1 (Br. of *Amici Curiae* NASDAQ OMX Group, Inc. *et al.*) 4 (noting that parties that opt to arbitrate their private disputes in the Chancery Court "have already contractually agreed that they believe that public access will harm, not help, the functioning of the arbitration"). However, where a right of access to judicial documents exists, courts should not, and do not, allow private contract rights to per se trump the public access right. *See, e.g.*, *Jessup v. Luther*, 277 F.3d 926, 929–30 (7th Cir. 2002) (ordering that a judicially approved settlement subject to a private agreement to keep the award confidential be unsealed in part because the public "has an interest in knowing what terms of settlement a federal judge would approve"); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (holding that the trial court abused its discretion in sealing settlement agreements per the parties' stipulation to such); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178, 1180, 1181 (6th Cir. 1983) (vacating an order sealing a settlement, the parties to which had entered into a confidentiality agreement, noting that the desire to shield prejudicial information in judicial records from competitors and the public "cannot be accommodated by courts without seriously undermining the tradition of an open judicial system," which recognizes the public's need to "analyze and critique the reasoning of the court").

*Amici* concede that arbitration proceedings on occasion are only effective if the parties are assured that their sensitive business or private information is protected from public disclosure and recognize that the Chancery Court rules are an attempt to provide this guarantee to

8

businesses that opt to arbitrate their private disputes in the forum. Yet, the rules' authorization of blanket confidentiality in the proceedings and records, including settlement agreements approved by the court and perhaps even reached with its assistance, fails to accommodate public access concerns and thus violates the right of access to judicial documents. Likewise, private agreements do not obviate the need for a party to make the necessary showings required to restrict public access to the records.

### III. Private settlement agreements subject to confidentiality orders potentially pose significant risks to public health and safety.

Settlement agreements often reveal serious questions about health, safety and other important issues that affect the public. As such, there is a significant public interest in disclosure of the information in order to alert consumers to potential dangers posed by products and services they use. Moreover, the public's interest in monitoring courts' conduct is no less compelling with regard to private settlement agreements submitted to a court for approval or enforcement.

Secret settlement agreements prevent health and safety issues, some life-threatening, from becoming public, thereby masking dangers that the public, had it known of their existence, could have more effectively guarded against, as the following examples strongly demonstrate:

- U.S. Department of Transportation officials said the sealing of documents in settled lawsuits related to rollover deaths in Ford Explorers equipped with Firestone tires that failed was one reason they did not identify the pattern of scores of such deaths. Matthew L. Wald & Keith Bradsher, *Judge Tells Firestone to Release Technical Data on Tires*,

N.Y. Times, Sept. 28, 2000, at C2, *available at* 2000 WLNR 3207540.[4] The tires were linked to more than 270 deaths nationwide. Keith Bradsher, *S.U.V. Tire Defects Were Known in '96 but Not Reported*, N.Y. Times, June 24, 2001, at A11, *available at* 2001 WLNR 3356280.

- A Pulitzer Prize-winning investigative report by *The Boston Globe* revealed that the Archdiocese of Boston confidentially settled child molestation claims against at least 70 priests over the preceding 10 years and thus shielded from public view the overwhelming scope of the theretofore relatively unknown issue. Matt Carroll *et al.*, *Scores of Priests Involved in Sex Abuse Cases: Settlements Kept Scope of Issue out of Public Eye*, Bos. Globe, Jan. 31, 2002, at A1, *available at* 2002 WLNR 2608621. A victim who entered a secret settlement with the church in 1995 said he was "ashamed" he did so, noting that had the settlement agreements been publicly disclosed, "this problem would have been exposed long ago." *Id.* Moreover, in the case of a single priest, Father John Geoghan, more than 130 people over 20 years came forward with accusations of sexual abuse. Matt Carroll *et al.*, *Church Allowed Abuse by Priest for Years: Aware of Geoghan Record, Archdiocese Still Shuttled Him from Parish to Parish*, Bos. Globe, Jan. 6, 2002, at A1, *available at* 2002 WLNR 2612594. The church secretly settled at least fifty of those claims. *Id.*

- In Louisiana, attorneys suing Continental Grain Company in connection with a 1977 grain elevator explosion that killed 35 workers learned of a company report detailing safety and fire hazards at another elevator in Wisconsin. Elsa Walsh & Benjamin Weiser,

---

[4] To facilitate access to secondary sources, "WLNR," or Westlaw NewsRoom, citations are provided whenever possible.

*Court Secrecy Masks Safety Issues; Key GM Fuel Tank Memos Kept Hidden in Auto Crash Suits*, Wash. Post, Oct. 23, 1988, at A1. In settling the case for $25 million on behalf of the families of the deceased workers, the families' attorneys agreed to return the documents and not to alert anyone to the alleged hazards, including workers at the Wisconsin facility. *Id.*

- A U.S. District Court in Florida prohibited an attorney suing the drug company Pfizer Laboratories from disclosing to any government agency, including the U.S. Food and Drug Administration, any information he obtained from Pfizer, unless the court gave permission. *Id.* Yet, the central allegation in the suit was that Pfizer did not issue adequate warnings about the risks of Feldene, a prescription painkiller that the plaintiff claimed caused him to bleed internally. *Id.*

- A Seattle woman sued two local laboratories, claiming they misread her Pap smears and failed to diagnose advanced cervical cancer, treatment for which required the 23-year-old to undergo a radical hysterectomy. Barry Siegel, *Dilemmas of Settling in Secret*, L.A. Times, Apr. 5, 1991, at A1, *available at* 1991 WLNR 3872929. Such misdiagnoses were not uncommon at the two labs in question, but secret court settlements had obscured the extent of the problem, the woman later learned. *Id.*

Where private settlement agreements are subject to court supervision, the strong public interest in being able to serve as a check upon the judicial process is implicated. The U.S. Supreme Court has made clear that the open administration of justice is the Court's preference and practice. Public access to court proceedings and records reassures the public that its government systems are working properly and correctly and enhances public knowledge and understanding of the court system. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,

570–71 (1980) (plurality opinion) (discussing openness in criminal trials). Allowing such access "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) (citing *Richmond Newspapers*, 448 U.S. at 569–71). As former Chief Justice Warren Burger wrote, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572. This presumption of public access is not, and should not be, limited to criminal proceedings and records. Writing for the U.S. Court of Appeals for the Seventh Circuit, Judge Easterbrook explained that a rationale underlying the enduring commitment to open courts is to preserve their legitimacy to the public:

> Judicial proceedings are public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat. . . .

*Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (citations omitted).

The public's interest in monitoring the functioning of its courts is no less compelling with regard to documents upon which courts rely to make their decisions. That is, the public has a strong interest in knowing the terms of a settlement agreement approved or enforced by a court in order to evaluate the court's invocation of its power over the settlement. *See, e.g*, *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties, even if the settlement comes with the court's active encouragement. Once a matter is brought before a court

12

for resolution, it is no longer solely the parties' case, but also the public's case. Absent a showing of extraordinary circumstances . . . the court file must remain accessible to the public.").

Lost in secret settlement agreements are the early warning signals about defective products or questionable conduct that often emerge in public documents. As such, the blanket confidentiality presents significant risks to public health and safety. Moreover, the secrecy deprives the public of its strong interest in monitoring and evaluating the judicial process — "an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) (footnote omitted).

## **CONCLUSION**

For the foregoing reasons, *amici curiae* respectfully request that this Court deny Defendants' motion for judgment on the pleadings and grant Plaintiff's cross-motion for judgment on the pleadings.

Dated: January 20, 2012

                                                  Respectfully Submitted,
                                                  By: */s/ William W. Erhart*
                                                  William W. Erhart
                                                  William W. Erhart, P.A.
                                                  1011 Centre Road, Suite 117
                                                  Wilmington, DE 19805
                                                  Tel: (302) 651-0113
                                                  erhart@erhartlaw.com
                                                  *Counsel for* amici curiae *The Reporters*
                                                      *Committee for Freedom of the Press,*
                                                      *American Society of News Editors,*
                                                      *The Associated Press, Maryland D.C.*
                                                      *Delaware Broadcasters Association,*
                                                      *The New York Times Company and*
                                                      *The Washington Post*

                                                    Lucy A. Dalglish
                                                    Gregg P. Leslie
                                                    Kristen Rasmussen
                                                    The Reporters Committee for
                                                      Freedom of the Press
                                                    1101 Wilson Blvd., Suite 1100
                                                    Arlington, VA 22209
                                                    Tel: (703) 807-2100
                                                    ldalglish@rcfp.org
                                                    *Of Counsel*

# **CERTIFICATE OF SERVICE**

       I hereby certify that on January 20, 2012, I electronically filed in searchable Portable Document Format the foregoing brief *amici curiae* with the United States District Court for the District of Delaware by using the CM/ECF system, thereby affecting service on the following counsel of record, all of whom are registered for electronic filing:

David L. Finger
Counsel for Plaintiff
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th Floor
Wilmington, DE 19801

Lawrence A. Hamermesh
Counsel for Defendants The Hon. Leo E. Strine, Jr., The Hon. John W. Noble, The Hon. Donald F. Parsons, Jr., The Hon. J. Travis Laster, The Hon. Sam Glasscock, III and the Delaware Court of Chancery
Widener University School of Law
4601 Concord Pike
Wilmington, DE 19803

Andre G. Bouchard
Counsel for Defendant State of Delaware
Bouchard, Margules & Friedlander, P.A.
222 Delaware Ave., Suite 1400
Wilmington, DE 19801

Dated: January 20, 2012

S. Mark Hurd
Counsel for *amicus curiae* the Corporation Law Section of the Delaware State Bar Association
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

William B. Chandler, III
Counsel for *amici curiae* NASDAQ OMX Group, Inc. and NYSE Euronext
Wilson Sonsini Goodrich & Rosati
8 W. Laurel Street
Georgetown, DE 19947

Dwight L. Davis, pro se
800 W. Ninth Street
Wilmington, DE 19801

                          /s/ *William W. Erhart*

William W. Erhart
*Counsel for* amici curiae *The Reporters Committee for Freedom of the Press, American Society of News Editors, The Associated Press, Maryland D.C. Delaware Broadcasters Association, The New York Times Company and The Washington Post*