IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DELAWARE COALITION FOR OPEN GOVERNMENT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HONORABLE LEO E. STRINE, JR., | : | |
| et al. | : | NO. 1:11-1015 |

MEMORANDUM

McLaughlin, J.                                                    August 30, 2012

          This is a challenge to a confidential arbitration

proceeding established by Delaware law and implemented by the

Delaware Court of Chancery.[1]  The plaintiff argues that the First

Amendment's qualified right of access prevents the defendants

from closing this proceeding to the public and press.  Both

parties have cross-moved for judgment on the pleadings.[2]

          The Court will grant the plaintiff's motion and deny

the defendants' motion.  The First Amendment protects a qualified

right of access to criminal and civil trials.  Except in limited

_____

     [1] The defendants named in this suit are the Delaware
Chancery Court judges responsible for administering the law.  The
State of Delaware and the Court of Chancery were also named as
defendants, but both parties agree they should be dismissed as
immune from suit under the Eleventh Amendment.  See Def. Br. at
34; Pl. Br. at 29.

     [2] In addition to the parties' briefs, three briefs on behalf
of amicus curiae have also been filed.  The Corporate Law Section
of the Delaware State Bar Association and the Nasdaq OMX Group
Inc. and NYSE Euronext filed briefs in support of the defendants'
motion.  The Reporters Committee for Freedom of the Press and
several news organizations filed a brief in support of the
plaintiff's motion.

circumstances, those proceedings cannot be closed to the public.
Under the Delaware law and Chancery Court rules, a sitting judge
of the Chancery Court, acting pursuant to state authority, hears
evidence, finds facts, and issues an enforceable order dictating
the obligations of the parties.  The Court concludes that the
Delaware proceeding functions essentially as a non-jury trial
before a Chancery Court judge.  Because it is a civil trial,
there is a qualified right of access and this proceeding must be
open to the public.

## I.   The Delaware Proceeding

In April of 2009, the Delaware State Legislature
amended the rules governing the resolution of disputes in the
Court of Chancery.  10 Del. C. § 349 (West 2012); Compl. ¶ 12.
This law gives the Court of Chancery "the power to arbitrate
business disputes when the parties request a member of the Court
of Chancery, or such other person as may be authorized under
rules of the Court, to arbitrate a dispute."  10 Del. C. §
349(a).  The arbitration procedure is "intended to preserve
Delaware's pre-eminence in offering cost-effective options for
resolving disputes, particularly those involving commercial,
corporate, and technology matters."  Del. H.B. No. 49, at 4
(2009).

Access to this arbitration procedure requires the
parties' consent.  There is no requirement that the parties have

an agreement to arbitrate their disputes prior to the dispute
arising, but both must consent to participate at the time the
dispute is submitted to the court.  10 Del. C. § 349(a).  In
addition, parties must meet certain eligibility criteria to
participate.  Id. §§ 349(a), § 347(a), (b).  At least one party
must be a "business entity" and one party must be a citizen of
the state of Delaware, although the same party can meet both
criteria.  Id. § 347(a)(2), (3);  Oral Arg. Tr. Feb. 9, 2012
at 8.  Thus both businesses and individuals can utilize the
procedure.  If the remedy sought includes only monetary damages,
the amount in controversy must be more than one million dollars;
if any equitable remedy is sought, even in conjunction with
monetary damages, there is no amount-in-controversy requirement.
10 Del. C. § 347(a)(5).

     The parties cannot submit their dispute for arbitration
if either is a "consumer," defined as an individual who purchases
or leases merchandise for personal use.  Id. § 347(a)(4); 6 Del.
C. § 2731(1) (West 2012).  The procedure is accessible for
"business disputes" and the law provides no limit to the type of
controversy that may be submitted.  Because the law allows
parties seeking only monetary damages to submit their disputes to
the Chancery Court, it allows some cases which would otherwise be
excluded under the Chancery Court's limited equitable
jurisdiction to be decided by Chancery Court judges.  Kevin F.

Brady & Francis G.X. Pileggi, Recent Key Delaware Corporate and
Commercial Decisions, 6 N.Y.U. J.L. & Bus. 421, 456 (2010).

        On January 5, 2010, the Chancery Court adopted Rules
96, 97, and 98 in order to administer the arbitration proceeding.
Compl. ¶ 13.  To initiate the proceeding, the parties file a
petition with the Register in Chancery, stating the nature of the
dispute, the claims made, and the remedies sought.  The parties
must certify that the eligibility criteria described above are
met.  Del. Ch. Ct. R. 97(a).  Once a petition is filed, the
Chancellor appoints a Chancery Court judge to preside over the
case as the arbitrator.[3]  Id. 96(d)(2).

        Within ten days of the petition's filing, the
arbitrator holds a preliminary conference with the parties, and
then, as soon as practicable, a preliminary hearing.  Id. 97(c)-
(d).  At the preliminary hearing, the parties and arbitrator
discuss the claims of the case, damages, defenses asserted, legal
authorities to be relied upon, the scope of discovery, and the
timing, length, and evidence to be presented at the arbitration
hearing.  Id. 96(d)(4).  At the preliminary hearing, the parties
also consider "the possibility of mediation or other non-
adjudicative methods of dispute resolution."  Id.

---

        [3]  The rule allows the Chancellor to appoint a master
sitting in the Chancery Court.  The Court is not aware of any
procedure creating these masters, nor do the parties address this
aspect of the law.  The Court considers only the situation where
Chancery Court judges are appointed as arbitrators.

An arbitration hearing occurs approximately ninety days after the petition's filing. Id. 97(e). At any stage of this process, the parties can agree to mediation through the Chancery Court or can seek the assistance of the judge in pursuing and reaching a settlement agreement. Id. 98(d)-(e).

Prior to the arbitration hearing, the parties exchange "information necessary and appropriate for the parties to prepare for the arbitration hearing and to enable the Arbitrator to understand the dispute." Id. 97(f). The parties can agree to the scope of information to be exchanged or can have the arbitrator decide the scope of discovery. Id. Court of Chancery Rules 26 through 37, which govern depositions and discovery in all Chancery Court matters, apply to the arbitration proceeding unless the parties and arbitrator together agree to different rules. Id. 96(c). Some discovery matters, such as the procedure for issuing subpoenas, must be created by the parties and the arbitrator. Id. 96(d)(4). All parties must participate in the arbitration hearing and at least one representative "with authority to resolve the matter must participate . . . ." Id. 98(a).

The arbitrator has the power to issue a final award and to make interim, interlocutory, or partial rulings during the course of the proceeding. Id. 98(f). The arbitrator's final award, issued after the hearing, can include "any remedy or

relief that the Arbitrator deems just and equitable and within the scope of any applicable agreement of the parties." Id. 98(f)(1). Finally, "[u]pon the granting of a final award, a final judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree." Id. 98(f)(3).

Either party may apply to the Supreme Court of Delaware "to vacate, stay, or enforce an order of the Court of Chancery." 10 Del. C. § 349(c). The Supreme Court can consider these motions only "in conformity with the Federal Arbitration Act [("FAA")]." Id. § 349(c); Compl. ¶ 12. Under the FAA, an arbitration award cannot be vacated on the grounds of legal error. An arbitration judgment can only be vacated if there is a showing of fraud, corruption, undue means in procuring the award; partiality, corruption, or certain misconduct on the part of the arbitrator; or the arbitrator exceeded his powers or failed to make a final award. 9 U.S.C. § 10(a) (2006). Awards can also be modified if there was a material miscalculation of figures, if the arbitrator exceeded his authority, or if the modification would not affect the merits of the controversy. Id. § 11.

The Delaware law and Chancery Court Rules governing the arbitration require that the proceeding be conducted out of the public view. The Delaware law provides:

> Arbitration proceedings shall be considered
> confidential and not of public record until such time,
> if any, as the proceedings are the subject of an
> appeal. In the case of an appeal, the record shall be

-6-

> filed by the parties with the Supreme Court in
> accordance with its rules . . . .

10 Del. C. §349(b).

The Chancery Court Rules require that all parts of the
proceeding, including all filings and all contacts between the
arbitrator and any party are "confidential and not of public
record." Del. Ch. Ct. R. 97(a)(4), 98(b). The Register in
Chancery does not file the parties' petition on the court's
public docketing system. Id. 97(a)(4). None of the hearings is
open to the public. Only parties are allowed to attend the
arbitration hearing unless they agree otherwise. Id. 98(b). All
"memoranda and work product contained in the case files of an
Arbitrator," and "[a]ny communication made in or in connection
with the arbitration that relates to the controversy being
arbitrated" are likewise confidential. Id.

The arbitrator's final award is not made public,
although a judgment is "entered in conformity therewith."[4]

---

[4] It is unclear exactly when or if a judgment becomes
public. As quoted above, Rule 97(f)(3) appears to require that a
judgment enforcing the award is made publically available
contemporaneously with issuing the award. The Delaware State
law, however, seems to contemplate that the entire proceeding,
including any judgment, remain confidential and not put on the
public docket unless one party appeals the award to the Delaware
Supreme Court. See 10 Del. C. § 349(b) ("Arbitration proceedings
shall be considered confidential and not of public record until
such time, if any, as the proceedings are the subject of an
appeal."). The only judgment currently available was made public
after one party petitioned the Chancery Court to confirm the
award. Chrysalis Ventures III, L.P. v. Mobile Armor, Inc., Arb.
No. 001-A-2011-VCL, C.A. No. 6069-VCL (Del. Ch. Dec. 30, 2011).

Judgments are publically available on the LexisNexis File & Serve system, under the title "arbitration judgments." No case or party information is listed on the docket. To date, only one judgment has been made public. See Chrysalis Ventures III, L.P. v. Mobile Armor, Inc., Arb. No. 001-A-2011-VCL, C.A. No. 6069-VCL (Del. Ch. Dec. 30, 2011). This judgement is a one-and-a-half page order confirming the arbitration award already entered in favor of the respondents. It contains no information about the nature of the case, except that the suit was originally filed as a civil suit in the Chancery Court and then converted into an arbitration proceeding by consent of the parties. Id.

　　　If the parties apply to the Supreme Court of Delaware for enforcement, stay, or vacatur of the award, then the confidential record of the proceedings "shall be filed by the parties with the Supreme Court in accordance with its Rules." Del. Ch. Ct. R. 97(a)(4). Once an appeal is filed, at least some of the record will become public. See id. ("The petition and any supporting documents are considered confidential and not of public record until such time, if any, as the proceedings are the subject of an appeal."). The Delaware Supreme Court has not yet adopted rules for the procedure, nor is there any public record of an appeal before the Supreme Court.[5]

---

[5] Under Delaware Supreme Court Rule 9(bb), records sealed by order of a trial court remain sealed unless the Court "for good cause shown, shall authorize the unsealing of such document or

-8-

The question at issue in this case is whether there is a right of access to this proceeding which is violated by the confidentiality requirements of the law and implementing rules.

II.  The Right of Access

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ."  U.S. Const. amend. I.  The prohibitions of the First Amendment extend to the states through the Fourteenth Amendment and bar government interference with both the speaker and the listener.  In 1980, the Supreme Court held that the First Amendment also protects the public's ability to attend criminal judicial proceedings.  Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980).

In Richmond Newspapers, a Virginia trial court excluded the public and press from a murder trial.  In five separate opinions, seven of the eight participating Justices held that the First Amendment prevents the government from denying public access to historically open government proceedings.  Id. at 580 (plurality opin.); id. at 583 (Stevens, J., concurring); id. at 585 (Brennan, J., concurring); id. at 599 (Stewart, J., concurring); id. at 604 (Blackmun, J., concurring).

---

record."  Del. Sup. Ct. R. 9(bb).  The Court is not aware of any arbitration awards or judgments which have been appealed to the Delaware Supreme Court.

In his plurality opinion, Chief Justice Burger began
with the historic practice of open criminal trials. He traced
the presumptive openness of the criminal trial from the earliest
recorded trials in Anglo-American history through the organic
documents of the states that would form this country. Reviewing
several hundred years of records, the Chief Justice could not
find "a single instance of a criminal trial conducted in camera
in any federal, state, or municipal court . . . ." Id. at 573
n.9.

Chief Justice Burger also described the public benefits
that explain this practice of openness. Public accountability
encourages honesty from witnesses and reasoned decision making by
jurists. Accessible court proceedings serve an educational
function, informing the public about the judicial system and the
important social and legal issues raised by many cases. Judicial
rulings are more easily accepted and mistakes are more quickly
corrected when the subject to the scrutiny of public and press.
Access to criminal trials thus improves both the functioning of
the judicial system and public confidence in its fairness. Given
the experience of public openness and the benefits of that
practice, the Court found that the First Amendment protects the
public's right to access historically open proceedings.

In 1982, the Supreme Court extended the reasoning of
Richmond Newspapers, holding that the right of access applies to

-10-

the testimony of witnesses at a criminal trial, even when the
state excluded the public in order to protect minor victims of
sexual offenses.  Globe Newspaper Co. v. Superior Court, 457 U.S.
596 (1982).  In two subsequent cases, the Supreme Court held that
the right also applies to criminal proceedings beyond the
criminal trials.  The public and press have the right to attend
the voir dire of jurors and preliminary hearings where evidence
for and against the accused is presented.  Press-Enterprise Co.
v. Superior Court of Cal. ["Press-Enterprise I"], 464 U.S.
501(1984);  Press-Enterprise Co. v. Superior Court of Cal.
["Press-Enterprise II"], 478 U.S. 1 (1986).  In this second case,
the Supreme Court concluded that the nature and function of the
preliminary hearing was so similar to a criminal trial that the
same justifications for openness applied.

     Although the Supreme Court has never addressed access
to civil judicial proceedings, every Court of Appeals to consider
the issue, including the Court of Appeals for the Third Circuit,
has held that there is a right of access to civil trials.  See
Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1061 (3d Cir.
1984); Westmoreland v. Columbia Broad. Sys., Inc., 752 F.2d 16,
23 (2d Cir. 1984); Rushford v. New Yorker Magazine, Inc., 846
F.2d 249, 253 (4th Cir. 1988); Brown & Williamson Tobacco Corp.
v. Fed. Trade Comm'n, 710 F.2d 1165, 1179 (6th Cir. 1983); Matter
of Cont'l Ill. Sec. Litig., 732 F.2d 1302, 1309 (7th Cir. 1984);

-11-

In re Iowa Freedom of Info. Council, 724 F.2d 658, 661 (8th Cir.
1983); see also Newman v. Graddick, 696 F.2d 796, 801 (11th Cir.
1983) (holding right of access applies to civil trials related to
incarceration of prisoners).

In Publicker Industries, the Court of Appeals explained
why the reasoning of Richmond Newspapers applied to civil trials.
As with criminal trials, the English and American legal systems
have historically presumed that civil proceedings are open to the
public. Publicker Indus., 733 F.2d at 1068-69; see also Richmond
Newspapers, 448 U.S. at 580 n.17 ("Whether the public has a right
to attend trials of civil cases is a question not raised by this
case, but we note that historically both civil and criminal
trials have been presumptively open.").

Many of the same rationales supporting openness in
criminal trials apply equally to civil trials. Disputes among
private citizens may not be matters of public concern in the same
way as criminal prosecutions. But the actions of those charged
with administering justice through the judiciary is always a
public matter.

Openness of civil trials promotes the integrity of the
courts and the perception of fairness essential to their
legitimacy. Public dissemination of the facts of a civil trial
can encourage those with information to come forward, and public
attention can discourage witnesses from perjury. The Court of

Appeals for the Third Circuit has summarized the six benefits of open judicial proceedings, both criminal and civil as:

> [1] promotion of informed discussion of governmental affairs by providing the public with the more complete understanding of the judicial system; [2] promotion of the public perception of fairness which can be achieved only by permitting full public view of the proceedings; [3] providing a significant community therapeutic value as an outlet for community concern, hostility and emotion; [4] serving as a check on corrupt practices by exposing the judicial process to public scrutiny; [5] enhancement of the performance of all involved; and [6] discouragement of perjury.

N. Jersey Media Grp., Inc. v. Ashcroft, 308 F.3d 198, 217 (3d Cir. 2002).

In several en banc opinions, the Court of Appeals has declined to extend the right of access to proceedings before the executive branch, which lacked the history and public benefits of openness. Thus there is no right of access to the records and decisions of the Pennsylvania body charged with investigating complaints against judicial officers. First Amendment Coal. v. Judicial Inquiry & Review Bd., 784 F.2d 467, 468 (3d Cir. 1986) (en banc). The Court of Appeals found no historically recognized right of access to administrative proceedings, which use fundamentally different procedures than the judiciary, and determined that the benefits of public access did not outweigh the many harmful consequences of publicizing unsubstantiated accusations against judicial officers. For the same reason, there is no right to access an administrative agency's records,

-13-

including internal memoranda analyzing the results of the
department's investigations. Capital Cities Media, Inc. v.
Chester, 797 F.2d 1164 (3d Cir. 1986) (en banc).

The Court of Appeals also held that there is no right
of access to executive branch deportation hearings involving
citizens suspected of having ties to terrorists. N. Jersey Media
Grp., 308 F.3d at 220-221. Although deportation hearings have
existed in the executive branch for approximately a century, the
Court found that there was never a guarantee that they were open
to the public. Id. at 200. In addition, the Court concluded
that risks to national security of opening the deportation
hearings outweighed the benefits of public access. Id. at 219-
20.

III. Analysis[6]

To determine if there is a public right of access to a
particular proceeding or record, the rule in the Third Circuit is
to apply the "logic and experience" test. N. Jersey Media Grp.,
308 F.3d at 208-09.

_____

[6] A motion for judgment on the pleadings should only be
granted if "the movant clearly establishes that no material issue
of fact remains to be resolved and that he is entitled to
judgment as a matter of law." Sheridan v. NGK Metals Corp., 609
F.3d 239, 259 n.25 (3d Cir. 2010). When considering a motion
under Rule 12(c), the court must view the facts alleged in the
pleadings and view any inferences to be drawn in the light most
favorable to the non-moving party. Rosenau v. Unifund Corp., 539
F.3d 218, 221 (3d Cir. 2008).

> First, because a tradition of accessibility implies the
> favorable judgment of experiences, we have considered
> whether the place and process have historically been
> open to the press and general public. . . . Second, in
> this setting the Court has traditionally considered
> whether public access plays a significant positive role
> in the functioning of the particular process in
> question.[7]

Id. at 206 (quoting Press-Enterprise II, 478 U.S. at 8).

The defendants argue that this Court should apply the

logic and experience test to determine if commercial arbitration

should be subject to the right of access.  The plaintiff argues

that the Delaware proceeding is essentially a bench trial and

Publicker Industries governs the state's ability to close the

proceeding to the public.

### A.    Threshold Question

Before this Court can consider the experience and logic

test, it must address this threshold question.  Has Delaware

implemented a form of commercial arbitration to which the Court

must apply the logic and experience test, or has it created a

procedure "sufficiently like a trial" such that Publicker

Industries governs?  El Vocero de Puerto Rico v. Puerto Rico, 508

---

[7] Even when recognized, the First Amendment's right of
access is not absolute.  Protected proceedings can be closed to
the public if a court finds "that closure is essential to
preserve higher values and is narrowly tailored to serve that
interest."  Press Enterprise II, 464 U.S. at 2743; Publicker
Indus., 733 F.2d at 1073.  This part of the First Amendment
analysis is not addressed by the parties or considered by the
Court.

U.S. 147, 149-50 (1993). The label Delaware gives the proceeding
offers little guidance. "[T]he First Amendment question cannot
be resolved solely on the label we give the event, i.e., 'trial'
or otherwise, particularly where the [proceeding at issue]
functions much like a full-scale trial." Press-Enterprises II,
478 U.S. at 7.

### 1.    Arbitration Verses Litigation

In many ways, arbitration and civil litigation are
similar. Arbitration is "a private system of justice." 1 Larry
E. Edmonson, Domke on Commercial Arbitration § 1:1 (3d ed. 2011).
Parties select a neutral decision maker, often an expert in the
relevant field, to resolve their dispute. Id. § 3:1. The
parties consent to be bound by the decision of the arbitrator,
and his resolution of the dispute is constrained by the parties'
agreement. This consent is one of arbitration's defining
features. The parties' voluntary agreement to resolve their
dispute through a decision maker of their choosing is the
"essence of arbitration." Dluhos v. Strasberg, 321 F.3d 365, 369
(3d Cir. 2003).

Arbitration differs from litigation because it occurs
outside of the judicial process. The arbitrator is not a
judicial official. William Catron Jones, Three Centuries of
Commercial Arbitration in New York: A Brief Survey, 1956 Wash.
U.L.Q. 193, 194; see also Kenneth R. Davis, Due Process Right to

Judicial Review of Arbitral Punitive Damages Awards, 32 Am. Bus. L.J. 583, 589-90 (1995) (comparing arbitration and litigation). In litigation, a court can compel an unwilling party.   In arbitration, the parties agree to participate in a specified forum.   Julie K. Bracker & Larry D. Soderquist, Arbitration in the Corporate Context, 2003 Colum. Bus. L. Rev. 1, 5.

Parties can craft arbitrations to their specific needs. Murray S. Levin, The Role of Substantive Law in Business Arbitration and the Importance of Volition, 35 Am. Bus. L.J. 105, 106 (1997).   The parties can specify the scope of the arbitrator's authority and design the applicable procedural rules.   Litigation follows the court's procedures and guidelines.

Because they are outside the judicial system, arbitration decisions are ad hoc, lacking any precedential value.[8]  Mentschikoff, above at 856.   "Judicial proceedings are governed by established rules on procedure, evidence and substance and by rules on the review of judgments by higher courts."  Edmonson, at § 1:1.  Arbitration tribunals, in "sharp contrast . . . are not generally required to apply principles of substantive law or court-established rules of evidence[,] . . . arbitrators give no reason for their decision, and the award is generally not open to review by courts for any error in finding

---

[8] In contrast, in England, an arbitrator can refer cases to the courts for adjudication on substantive issues of law. Mentschikoff, above at 856-57.

facts and applying law." Id.

The chief advantage of arbitration is the ability to resolve disputes without aspects often associated with the legal system: procedural delay and cost of discovery, the adversarial relationship of the parties, and publicity of the dispute. Soia Mentschioff, Commercial Arbitration, 61 Colum. L. Rev. 846, 849 (1961); Lisa Bernstein, Understanding the Limits of Court-Connected ADR: A Critique of Federal Court-Annexed Arbitration Programs, 141 U. Pa. L. Rev. 2169, 2240-44 (1993). As the product of private agreement between the parties, historically, arbitrations have been conducted outside the public view. See, e.g., Michael Collins, Privacy and Confidentiality in Arbitration Proceedings, 30 Tex. Int'l L.J. 121, 122 (1995); 1 Larry E. Edmonson, above at § 1:5.

### 2.  Arbitrators Verses Judges

Because arbitrations offer a private system of remedies that parallels the courts, a judge and arbitrator share many of the same attributes. An arbitrator is "[a]n impartial person selected . . . to hear the evidence and deliver a final and binding decision as a determination" of parties' dispute. A Dictionary of Arbitration and its Terms 27 (Katharine Seide ed., Oceana Publications, Inc.) (1970). An arbitrator takes on judge-like functions when presiding over an arbitration and may look and act much like a judge. For example, arbitrations may occur

-18-

in courthouses, and arbitrators, especially those acting within court-annexed programs, may be paid by the government for their services. See, e.g., W.D. Pa. ADR Policies & Procedures 5.3(C); 5.4(B); E.D. Pa. Local R. 53.2(2), (5). Because of their "quasi-judicial functions," arbitrators appointed by federal courts are immune from civil suit in performance of their duties. See 28 U.S.C. § 655(c) (2006).

But an arbitrator and a judge perform very different functions. This distinction is more than just semantic. Arbitrators act as a "private extraordinary Judge[], chosen by the Parties to give Judgments between them." Dictionary of Arbitration, above at 27-28. They are empowered by the parties' consent and limited by the scope of that consent. They serve the parties.

Judges, on the other hand, are empowered by their appointment to a public office. They act according to prescribed rules of law and procedure. They serve the public. The Court of Appeals for the Fifth Circuit described the difference between the judge and arbitrator this way: "The trial judge . . . bears a special responsibility in the public interest to resolve the . . . dispute, for once the judicial machinery has been set in train, the proceeding takes on a public character in which remedies are devised to vindicate the policies of the [law], not merely to afford private relief . . . . The arbitrator's role in

-19-

the grievance-arbitration process, on the other hand, is to carry out the aims of the agreement that he has been commissioned to interpret and apply, and his role defines the scope of his authority." Hutchings v. U.S. Industs., Inc., 428 F.2d 303, 311-12 (5th Cir. 1970).

The defendants argue against this distinction between judge and arbitrator, but there is little evidence to support that argument. Arbitration has a long history, but is characterized as an alternative to court administered justice. Edmonson, above § 2. One early treatise on arbitration suggests that judges have served as arbitrators in pais, that is, outside their official obligations. John Torrey Morse, The Law of Arbitration and Award 106 (1872); Black's Law Dictionary (9th ed. 2009). The American Bar Association's Code of Judicial Conduct permits a judge to "act as an arbitrator or a mediator" when "expressly authorized by law," but does not provide any examples of judges acting as arbitrators. Arthur Garwin, et al., Annotated Model Code of Judicial Conduct 393-95 (2d ed., 2011).

Even with the proliferation of alternative dispute resolution in courts, judges in this country do not take on the role of arbitrators. States with court-annexed arbitration programs appoint third party neutrals such as attorneys and retired judges, and not sitting judges, to serve as arbitrators. Elizabeth Plapinger & Donna Stienstra, ADR and Settlement in the

-20-

Federal District Courts: A Sourcebook for Judges and Lawyers 29-
34 (1996).  The California Court of Appeal has held that the
judge's public role and obligations prevent a sitting judge from
acting as an arbitrator for even consenting parties.  Elliott &
Ten Eyck P'ship v. City of Long Beach, 67 Cal. Rptr. 2d 140, 144
(Cal. Ct. App. 1997); Heenan v. Sobati, 117 Cal. Rptr. 2d 532,
535-36 (Cal. Ct. App. 2002).

        The Alternative Dispute Resolution Act, which creates
court-annexed arbitration in the federal courts, seems to allow
magistrate judges to serve as arbitrators.  But neither the
parties nor this Court could find evidence of that practice, and
several courts have noted the inherent tension between the role
of judge and arbitrator.  28 U.S.C. § 653(b); DDI Seamless
Cylinder Int'l Inc. v. Gen. Fire Extinguisher Corp., 14 F.3d
1163, 1165-66 (7th Cir. 1994) (noting that the procedures of the
federal courts do not allow judicial officers to act as both an
arbitrator and judge); Ovadiah v. New York Ass'n for New Ams.,
Nos. 95-10523, 96-330, 1997 WL 342411, at *10 (S.D.N.Y. June 23,
1997) (noting the "inherent difficulty in and serious potential
problems with having judicial officers step out of their
traditional adjudicatory functions").

        Laws giving courts jurisdiction to enforce arbitration
agreements likewise do not cast judges as arbitrators.  See 9
U.S.C. 9 et seq.

A judge bears a special responsibility to serve the public interest. That obligation, and the public role of that job, is undermined when a judge acts as an arbitrator bound only by the parties' agreement.

### 3.  The Delaware Proceeding

The Delaware proceeding, although bearing the label arbitration, is essentially a civil trial.

When the parties file a petition for an arbitration proceeding, the Chancellor, and not the parties, selects the judge who will hear the case. Rather than set rules for arbitration discovery, many of the same rules governing discovery in the Chancery Court apply to the arbitration.

A sitting judge presides over the proceeding. It is this fact which distinguishes the Delaware proceeding from court-annexed arbitrations where third parties sit as arbitrators. Just as in any other civil case, the judge conducts the proceedings in the Chancery courthouse with the assistance of Chancery Court staff. The judges are not compensated privately by the parties; the Chancery Court judge and staff are paid their usual salaries for arbitration work.

In a usual arbitration proceeding, if one party refuses to comply, the other can enforce compliance only by pursuing enforcement through a court. In Delaware, the judge and arbitrator are the same, so the judge's final award results in a

judgment enforced by state power.  The judge can also issue interim, interlocutory, or partial orders and awards.  Del. Ch. Ct. R. 98(f)(2).  These orders, and the final arbitration award and judgment, bind the parties much as any court orders would. They are nearly identical to a judge's orders in a civil trial, but with one important difference.  Because the Delaware proceedings and awards are confidential, the judge does not publish his rulings or reasoning.  The public does not know the factual findings the judge has made or what legal rules the judge is, or should be, applying to these arbitrations.

In the Delaware proceeding, the parties submit their dispute to a sitting judge acting pursuant to state authority, paid by the state, and using state personnel and facilities; the judge finds facts, applies the relevant law, determines the obligations of the parties; and the judge then issues an enforceable order.  This procedure is sufficiently like a civil trial that Publicker Industries governs.

The defendants argue that the Delaware proceeding is different from a civil trial.  In the Delaware proceeding, the parties consent to participate and agree to procedures designed to facilitate quicker discovery and faster resolution of the dispute.  With the consent of the judge, the parties can also amend any discovery procedures.  In addition, the process encourages settlement and non-adversarial resolution at nearly

every stage.  By submitting to the Delaware proceeding, the parties agree to limit their appeal rights.  The judge's final award can only be challenged if the award is procured by corruption, fraud, undue means, partiality, misconduct, or where the arbitrator exceeded his powers.  The decision cannot be reviewed for errors of fact or law.

These features do not transform the Delaware proceeding into an arbitration nor distinguish it from a civil trial.  In fact, parties in civil litigation can agree to similar procedures to expedite discovery and reduce costs.  For example, parties can agree to limit discovery, to a trial on stipulated facts or on summary judgment rather than oral testimony, and to waive or limit the right to appeal a judicial determination.  DDI Seamless, 14 F.3d at 1166.  The parties' consent cannot alter the judge's obligation in his public role as a judicial officer.  Finally, courts across the country encourage parties to pursue settlement and alternative dispute resolution.[9]  Plapinger & Stienstra, above at 4.

---

[9]  Mediation and settlement negotiation are not at issue in this case.  In a mediation, as in settlement negotiations, the parties come to a mutually agreed upon resolution of their dispute.  The mediator's recommendation is not binding. Edmonson, above § 1:3.  In arbitration, by contrast, a third party issues a binding ruling about each parties' rights and obligations.

B.    The Experience and Logic Test

Because the Court finds that the Delaware procedure is a civil judicial proceeding, it is not necessary to reiterate the thorough analysis of the experience and logic test performed by the Court of Appeals in Publicker Industries.

The public benefits of openness were well described by the Court of Appeals, and this Court does not dwell on them except to note that they are clearly applicable to the Delaware proceeding.  These benefits accrue to civil disputes among corporate citizens as well as to those between individuals, both of whom can participate in the Delaware procedure.  Diverse business disputes may be submitted to the Chancery Court, and open proceedings can serve to educate the public about important legal and social issues.  Public scrutiny discourages witness perjury and promotes confidence in the integrity of the courts.  Public confidence that court proceedings are fair is protected when the public can access those proceedings and understand the reasoning supporting judicial findings and rulings.

The public benefits of openness are not outweighed by the defendants' speculation that such openness will drive parties to use alternative non-public fora to resolve their disputes.  Even if the procedure fell into disuse, the judiciary as a whole is strengthened by the public knowledge that its courthouses are open and judicial officers are not adjudicating in secret.

## IV.   Conclusion

The Court concludes that the right of access applies to the Delaware proceeding created by section 349 of the Delaware Code. The portions of that law and Chancery Court Rules 96, 97, and 98, which make the proceeding confidential, violate that right.

An appropriate order shall issue.